IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Dolores Y Anzaldua | ) |
| Plaintiff | ) |
| v. | ) CIVIL ACTION NO. H-04-2861 |
| United Electrical & Instrumentation Management, | ) |
| Defendant | ) |

**MEMORANDUM AND ORDER**

Before the court is a motion by the Defendant, United Electrical Instrumentation Management (UEI), for summary judgment against the Plaintiff, Dolores Y. Anzaldua (Anzaldua). Doc. 33. Anzaldua filed a response. Doc. 34. UEI filed a reply. Doc. 36.

The Defendant's motion for summary judgment is GRANTED. Doc. 33.

The Motion to Strike (Doc. 37) and the joint motion to Stay Pretrial Materials Deadline (Doc. 40) are DENIED as MOOT.

In reaching this decision, the court has reviewed the following documents:

(1)     Deposition of Delores Anzaldua, Doc. 33, Exh. C, and Doc. 34, Exh. A.

(2)     Deposition of Charles (C.J.) Willey, Doc. 33, Exh. B, Doc. 34, Exh. B.

(3)     Personnel records of Delores Anzaldua and other UEI employees attached as exhibits to the Affidavit of Jimmie Lapier, Doc. 33, Exh. D.

(4)     Affidavit of Bobby Cram, Doc. 33, Exh. A, 10.

(5)     Affidavit of Delores Anzaldua, Doc. 34, Exh. C

(6)     Deposition of Rene Mejia, Doc. 34, Exh. D

(7)     Deposition of Everett Daniels, Doc. 34, Exh E

(8)     Deposition of Victor Holmes, Doc. 34, Exh. F

(9)     Emails commending Delores Anzaldua, Doc. 34, Exh. G.

(10)    Disciplinary records of other UEI employees, Doc. 34, Exh. H - K.

(11)    Job description for Delores Anzaldua's position, Doc. 34, Exh. L.

**FACTS**

Delores Anzaldua (Anzaldua) was born in 1942. United Electrical Instrumentation Management (UEI) hired her on July 20, 2001 and terminated her employment in August 2003. Anzaldua alleges that her sex and age motivated UEI's decision to terminate her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, the Civil Rights Act of 1991 and 42 U.S.C. § 1981a; and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* She also raised claims for intentional infliction of emotional distress, but has not pursued those claims.

UEI provides various services to Dow Chemical at a plant in Texas City. Some of those services include services provided by employees of UEI classified as "laborers." Cram Aff., Doc. 33, Exh. A, 3. A laborer is an unskilled position that requires the ability to perform physical tasks, follow safety regulations, work without constant supervision, and "knowledge of safe use of appropriate equipment which may include (but not limited to) manlifts, forklifts, and company trucks." Job Description: Laborer, Doc. 34, Exh. L, at 1-2.

Anzaldua worked as a laborer. According to her supervisor, C.J. Willey (Willey), "she was qualified [because] it's not hard to be qualified as a laborer." Willey Dep., Doc. 34, Exh. B at 209:11-12. However, Anzaldua could not operate a forklift as

the fourteenth element the job description for laborers might have required.  Id at 132:17-19 and Job Description: Laborer, Doc. 34, Exh. L, at 1-2, 14.  In contrast, the other laborers assigned to the Solution Vinyl Resins unit at Dow were certified to drive forklifts.  Willey Dep., Doc. 33, Exh. B at 132:17-19.

During her time at UEI employees of Dow had no problem with Anzaldua's work.  Dep. of Daniels, Doc. 34, Exh E at 12 and Mejia, Doc. 34, Exh. D at 14.  Dow's employees commended Anzaldua to her supervisors.  Doc. 34, Exh. G.

Willey formed a different opinion.  When he began supervising her, Willey found her performance "was fine," even though he "knew that her work wasn't up to par" and that "she could do better."  Willey Dep., Doc. 33, Exh. B at 153:10-12.  Willey testified that he recorded his observations in a black book, but cannot produce it.  Id. at 90:12-15.  Although deprived of his black book, Willey recalled that Anzaldua's work was inconsistent: "she would do good for a couple of months," after a while, "she would hit this wall and then she would do horrible.  I mean horrible … then she would come back up … and she would even make a couple of call-outs here and there."  Id. at 153:18-24.  By "the last six months of her employment there, things started really going downhill" because Willey, "was - all the time … having to send somebody over to get her work done, because they were starting to complain."  Id. at 153:25-154:5.  Anzaldua never received formal disciplinary reprimands from Willey for falling behind on her work because he, "wasn't the kind of foreman" who would go to a job site and "every time you mess up write you up," but, "would rather try to work with it on our level and try to correct the problem."  Id. at 154:25-155:5.  To work with Anzaldua, Willey, instructed her to complete her duties within her assigned shift.  Id. at 97:14-25, 99:1-101:24, and 102:17-103:7.

Despite Willey's instructions, other workers helped Anzaldua complete her tasks. Anzaldua Dep., Doc. 33, Exh. C, 110:2-21, 118:11-119:16, 160:13-161:8; and Willey Dep., Doc. 33, Exh. B. 127:18-130:4. Willey received complaints about Anzaldua's unwillingness to work hard from other employees of UEI during 2002 and 2003. Willey Dep., Doc. 33, Exh. B, 72:2-74:5, 90:3-11, 105:15-107:18, 107:24-108:19, 109:5-11. In fact, Anzaldua admitted that that she had told other workers on her crew she had done her time at the end of a shovel and that others should perform the harder manual labor because she had done her share already. Anzaldua Dep., Doc. 33, Exh. C at 142:17-143:9.

Unlike Anzaldua, several other employees had been disciplined. Jirhmal Clay was a male, less than forty, and the subject of a number of disciplinary actions before Anzaldua was terminated. Willey Dep., Doc. 34, Exh. B at 172, and Doc. 34, Exh. H. He was late a number of times, failed to clock out, left early without permission, signed-in other workers when they were not there, and violated safety rules. Doc. 34, Exh. H. Sheldon Rawlins was also a male less than forty who was disciplined for similar offenses, including falsification of work time, as well as abusive conduct towards a coworker. Doc. 34, Exh. I. Sheila Cambiano was a woman less than forty who failed to attend work regularly. Doc. 34, Exh. J. Others too had been disciplined for lesser infractions.

In January and February 2003, Willey decided to lay off several younger, male employees including Danny Kibodeaux, Juan Lopz, and Ray Petrash. Lapier Aff., Doc. 33, Exh. D at Exh. 6. In each case of an employee leaving, UEI recorded the reason that the employee left and whether the employee met various "performance standards" including quality of work, quantity of work, job knowledge, attitude, teamwork, attendance, and safety. The records of Kibodeaux, Lopez, and Petrash indicate that they

left because of a "reduction in force" and that each of them met, but did not exceed, performance standards, except that Lopez ranked "below" "performance standards" for his "attendance." Id.

UEI claims that Dow asked it to reduce its workforce again in July 2003. Cram Aff., Doc. 33, Exh. A, 10. It was to lay off twelve workers, including one laborer. Id. However, Anzaldua disputes whether Dow actually asked UEI to reduce its force. UEI has not provided any evidence that Dow directed it to reduce its force other than Cram's affidavit. UEI chose to lay-off Anzaldua. It redeployed existing laborers to the areas for which she was responsible. Anzaldua Dep., Doc. 34, Exh. A at 85-86; Anzaldua Aff., Doc. 34, Exh. C at 5; Daniels Dep., Doc. 34, Exh E at 17-18; and Mejia Dep., Doc. 34, Exh. D at 20.

To determine whom to lay-off, Willey considered the quality and quantity of work performed, job knowledge, attitude, teamwork, attendance, and safety, the very categories printed on UEI's forms. See, Lapier Aff., Doc. 33, Exh. D at Exh. 6, Willey Dep., Doc. 33, Exh. B. at 57:16-58:109, 66:2-67:14, 67:20-69:19. Despite using the criteria printed on UEI's forms, Willey testified that he generated these factors himself. Id. at 69:20-70:10. He found Anzaldua to be the worst of his workers in these respects. On the standard forms recording her discharge, he rated her as equal to Kibodeaux, and Petrash, but better than Lopez, the younger males whom he had discharged in early 2003.

Willey also cited Anzaldua's unwillingness to work overtime as a reason that she was chosen to be the worker terminated. Willey Dep., Doc. 33, Exh. B. at 66:2-67:14. Anzaldua "did a lot of overtime," in early 2002, but not in 2003. Dep. Anzaldua, Doc. 34, Exh. A at 150. However, during the time that Willey supervised Anzaldua, Anzaldua identifies an occasion on which Willey assigned five other workers (six including Willey) to work overtime. Anzaldua Dep., Doc. 34, Exh. A at 109:6-21.

Ultimately, Willey did not factor overtime as a large part of his decision. Willey Dep., Doc. 33, Exh. B. at 69:10-12.

When asked why she believed that Willey's decision to terminate her employment was motivated by her age or sex, she answered, "it was his little buddies that he wanted around." Anzaldua Dep., Doc. 33, Exh. C at 120:14-15. Asked to confirm that she believed she was terminated "because" she wasn't "his friend," she did so, explaining "they did a lot of partying when they would get out of work together, all of them" and that Willey's friendship with members of the crew played a role. Id. at 120:16-25.

**LEGAL ANALYSIS**

### I. Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis of the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding any of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment because the substantive law governing the suit identifies the essential

elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 248, 256-57 (1986). The moving party need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex*, 477 U.S. at 323-25. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). A party seeking summary judgment may rely upon the complete absence of proof of an essential element if (1) the party seeking summary judgment has no access to evidence of disproof, (2) ample time has been allowed for discovery, and (3) the party opposing the motion for summary judgment bears the proof burden. *Fontenot,* 780 F.2d at 1195.

If the moving party establishes the absence of any dispute of material fact, then the burden then shifts to the opposing party to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The party opposing a motion for summary judgment may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256-157. The non-moving party may identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary

judgement, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form.

> That the defendants' response does not affirmatively state in the document itself that the [witnesses] are competent to testify as to the facts to which they swore does not necessarily doom their testimony. Affidavits are to be considered in conjunction with other types of evidence before the court. 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738 at 467 (1983). Furthermore, the papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party. Id. at 484. In previous cases we have accepted evidence from the party opposing summary judgment despite its failure to meet the technical requirements of rule 56(e). See, e.g., *Jackson v. State of Mississippi,* 644 F.2d 1142, 1144 (5th Cir.1981) (even though opposing party's affidavit did not conform to rule 56(e), the court did not reject his claim that there were issues of fact to be decided); *Whitaker v. Coleman,* 115 F.2d 305, 307 (5th Cir.1940) (non-moving party's proffered transcript from earlier trial sufficient to show outstanding issues of fact despite "defects in its certification and presentation"); see also *Albert Dickinson Co. v. Mellos Peanut Co.,* 179 F.2d 265 (7th Cir.1950) (plaintiff's verified petition sufficient to oppose summary judgment). Thus, so long as the record, taken as a whole, demonstrates that the [witnesses'] testimony meets the requirements of rule 56, it is properly before the court and should be considered on a summary judgment motion.

*Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).

## II. Legal Standard for Discrimination Claims

It is "unlawful for an employer ... to … to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §

623(a)(1).

To support a claim of discrimination, a plaintiff may offer direct or circumstantial evidence. *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir. 1994). Direct evidence includes any statement or written document showing a discriminatory motive on its face. *Portis v. First National Bank of New Albany, MS,* 34 F.3d 325, 329 (5th Cir. 1994). Anzaldua has not offered any such evidence. Therefore, her case is circumstantial.

> According to a recent summary of the law that binds courts in the Fifth Circuit:
>
> In an age discrimination case … based on circumstantial evidence, the parties must engage in a burden-shifting dialectic. The initial two steps of this scheme are satisfied by production of evidence; one need not persuade to shift the burden to the other party. Initially, the plaintiff must establish a prima facie case that establishes evidence of discriminatory treatment. A claimant can establish a prima facie case by showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. In response, the defendant can assert a legitimate nondiscriminatory reason for its employment action. If the defendant succeeds in articulating a nondiscriminatory reason, the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination. This may be achieved by demonstrating that the reason for the employment action is merely a pretext for discrimination.

*Baker v. American Airlines, Inc.,* 430 F.3d 750, 753-54 (5th. Cir. 2005) (citations omitted).[1]

In this case, Anzaldua established a prima facie case. She was discharged. She has offered evidence that she was qualified as a laborer. She was both female and over 40 at the time of her discharge. Finally, UEI replaced her with workers outside of the

---

[1] Courts should employ the same analysis when deciding sexual discrimination cases. *Septimus v. University of Houston,* 399 F.3d 601, 609 (5th Cir. 2005).

protected classes of which she was a member. Although UEI argues that it did not replace her because its overall workforce shrank, it did reassign younger workers to the areas for which she had been responsible. In *Baker,* the Fifth Circuit allowed a plaintiff to establish a prima facie case even though her employer had reduced its entire workforce by 10% because, "a plaintiff need only make a low showing to shift the burden, and it is arguably possible to construe the Answer as an admission that [the employer] retained younger employees. With the other elements being satisfied, it is conceivable that [the plaintiff] may have established a prima facie case and shifted the burden to [the employer]." *Id.* at 754. Like the defendant in *Baker,* UEI "retained younger employees" so "it is conceivable that" Anzaldua "established a prima facie case and shifted the burden to" UEI. UEI met its burden by articulating legitimate reasons for discharging Anzaldua: Dow required UEI to reduce its force of laborers by one and Anzaldua's supervisor, Willey, believed that Anzaldua was both the source of discontent in the workplace and a poor worker.

Once the parties complete the first two steps of shifting burdens, "the next step of the analysis returns the burden to [the plaintiff]. Moreover, this burden is one of persuasion, not merely production of evidence." *Id.* at 754 (citations omitted). To meet the burden of persuasion, the plaintiff must, "offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004) (citations omitted). In arguing that the employers stated reason was a pretext, a plaintiff may not simply, "shift the burden onto

[the employer]" by demanding that the employer "disprove [the plaintiff's] theory." *Baker,* 430 F.3d at 754.  However, "'sufficient evidence to reject the employer's explanation' may permit a trier of fact to determine that an employer unlawfully discriminated, and may therefore be enough to prevent summary judgment. [and] summary judgment is inappropriate if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [age] was a determinative factor in the actions of which plaintiff complains."  *Pratt v. City of Houston, Tex.,* 247 F.3d 601, 606-07 (5th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 148 (2000)).  Thus, the possibility that a jury may disbelieve an employer's reasons for terminating a plaintiff does not defeat a motion for summary judgment unless the evidence also somehow suggests that the employer's motives were discriminatory.

### III.    Analysis of Anzaldua's Claims

Anzaldua presented three reasons to believe that UEI's reasons to fire her were a pretext:  (1) workers at Dow found her work acceptable; (2) UEI cannot produce the documentary evidence of Dow's request to reduce workforce; and (3) other employees were disciplined for missing work, i.e., they spent less time on the job than she did.  She also argues that Willey manipulated his criteria for deciding whom to terminate because Willey, without regard to any company policy, decided to disregard disciplinary records when deciding to end Anzaldua's employment.  Each of these reasons provides a reason to disbelieve Willey and, therefore, to allow Anzaldua to proceed to trial.  For the purpose of this motion, this court assumes that Willey's decision was unprofessional and economically irrational, that Anzaldua was a competent worker, that Willey did not record his evaluations of Anzaldua in a black book, that Willey fabricated his criticisms

of her, that UEI laid off only Anzaldua without instructions from Dow, and that Willey really wanted only to retain his "little buddies" with whom he partied after work.

Under the facts of *Reeves,* the evidence that allowed a jury to disbelieve an employer's reasons for terminating also allowed a jury to infer discriminatory intent. No other evidence supported the employer's position. Unlike the employer in *Reeves,* UEI presented independent, and unchallenged, evidence that would not exist if UEI had discriminated against Anzaldua on the basis of age or sex. It terminated the employment of younger males, Kibodeaux, Petrash, and Lopez, in January and February 2003, but retained Anzaldua. UEI rated Kibodeaux and Petrash as equal to Anzaldua, even though it discharged them before terminating Anzaldua's employment. Thus, it is more proper to characterize Anzaldua as the fourth person terminated in 2003, rather than emphasize Willey's decision to eliminate every older woman working for UEI in the SVR in July 2003.

Because Anzaldua was the fourth person terminated, construing the facts of this case in her favor supports only the proposition that Willey did not honestly explain why he recommended terminating Anzaldua. The presumed facts do not prove that Anzaldua's age or sex motivated Willey to choose Anzaldua for severance. Whatever thoughts may have motivated Willey, that motivation caused him to discharge two younger male workers six months before he chose to lay-off Anzaldua. By choosing two younger males, with the same overall record of discipline and competence as Anzaldua, to lay-off before Anzaldua, Willey demonstrated that Anzaldua's sex and age had no practical effect on his decision.

Because the uncontested evidence in this case severs any link between Anzaldua's sex or age and Willey's decision to terminate her employment, this court holds that no

dispute of material fact exists and the Defendant, United Electrical Instrumentation Management, is entitled to judgment as a matter of law. Accordingly, it is hereby ORDERED, that the Defendant's motion is GRANTED. Doc. 33.

SIGNED at Houston, Texas, this 6th day of March, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE